# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CIVIL ACTION NO. 5:13-CV-00183-TBR-LLK

ADRIAN BRADLEY,                                                Plaintiff,

&

ACE AMERICAN INSURANCE CO.,                       Intervenor-Plaintiff,

v.

3S TEAM, LLC,                                               Defendant.

## MEMORANDUM OPINION AND ORDER

While working on scaffolds assembled by 3S Team, LLC, Adrian Bradley stepped onto the edge of a scaffolding plank. Without warning, the scaffolding plank twisted in an ascending manner, causing Bradley to lose his footing and fall from the third to the second level of the scaffold. Subsequently, Bradley filed this action against 3S Team, alleging its negligent assembly of the scaffold caused his injuries. 3S Team seeks summary judgment on that claim. 3S Team argues that Bradley misapprehends the duty owed to him and has not proffered any evidence showing it breached its duty of care. Resolving all ambiguities and drawing all reasonable inferences in Bradley's favor, however, the Court is not so sure. Accordingly, 3S Team's Motion for Summary Judgment (R. 56) is **DENIED**.

### I.

### A.

For many years, NewPage Corporation has contracted with other companies to inspect the boilers at its Wickliffe, Kentucky facility. *See* R. 56-4 at 26 (Ingram's Deposition). In 2012, several subcontractors, including 3S Team, LLC, participated in

the boiler shutdown and testing process. *See* R. 56-2 at 1, ¶¶ 1–3 (Fudge's Affidavit). NewPage hired 3S Team to erect scaffolds inside the boilers. *See id.*, ¶ 1; *see also id.* at 5–9 (Purchase Order). Although 3S Team offered to inspect and maintain the scaffolds at additional cost, *see id.* at 3 (Project Proposal), NewPage declined to purchase those services, *see* R. 56-4 at 22. Employees of Hi-Tech Testing Service, Inc., RMR Boilers, and Refra-Chem utilized the scaffolds to access various levels of the boilers' interior to conduct nondestructive testing. *See id.* at 18, 25–26. Hi-Tech Testing contracted with LFI Fort Pierce, Inc., also known as Labor Finders International, to provide additional employees to assist with the testing process. *See* R. 56-3 at 13–17 (Bradley's Deposition). Adrian Bradley was one such employee. *See id.* at 17.

On September 18, 2012, 3S Team completed the scaffolds and released them to NewPage at approximately 6:00 a.m. *See* R. 56-2 at 2, ¶ 4. Around 7:00 a.m., other subcontractors arrived. *See* R. 56-3 at 54. The crew, including Bradley, worked in the boilers on the scaffolds until around 8:00 p.m. that night without incident. *See id.* at 60–62.

The next morning, Bradley returned to the NewPage facility and worked for approximately two hours before he fell backwards from the third level of the scaffold to the second level. *See id.* at 63–64, 68–69. Bradley's recollection of the accident is limited:

> I was speaking with Casey [Cline], which is the supervisor guy. . . . I had just completed a task, and he reassigned me [to] another task. And . . . as we [were] talking, he asked me did I have everything [that] I needed. I told him, yes, sir. And then I started out walking, and before I knew anything, I was falling backwards.
>
> . . . .

> I was headed towards the wall that [Cline] assigned me to. . . . I'm paying attention to where I'm going, but . . . you know, who's thinking that a board is going to come up from under you . . . .

*Id.* at 68–69.  Bradley originally thought that the plank had broken underneath him, but others told him that it had flipped up before landing on top of him.  *See id.* at 69.

Bradley testified that Casey Cline, his supervisor and an employee of Hi-Tech Testing, saw him fall.  *See id.* at 72.  In a statement handwritten on a preprinted template ostensibly provided by 3S Team, Cline described the incident as follows:

> On September 19, 2012, at [9:30 a.m.], I was running an extension cord from the second level to the third level to [Bradley] when he stepped on a scaffolding board and it twisted from the inner wall side [of the boiler] towards the boiler cavity, falling to the second level [and] striking the handrail on the second level on the way down . . . . I waited with [Bradley] who remained [conscious].  I exited the boiler when help arrived.  During the period of time that I was in the boiler I did not see any missing scaffolding boards.

R. 69-1 at 50 (Cline's Statement); *see also* R. 56-3 at 96–97.  Jacob Broumley, also a Hi-Tech Testing employee, provided a statement too.  It reads:

> [Bradley was] working on [the] scaffold and was walking [when he stepped] on the edge of [the scaffolding plank] and it rolled up.  He fell to the deck below with the [scaffolding plank].  On his way down [Bradley] hit [the scaffolding railing] with [his] shoulder on [his] side knock[ing] him forward toward [the] boiler wall and landed on [the] deck . . . .  And throughout the course of the day there were no scaffold boards missing before, during, or after the accident.

R. 69-1 at 48 (Broumley's Statement); *see also* R. 56-3 at 91–92.  As a result of his fall, Bradley sustained severe injuries to his lower back.  *See* R. 1-2 at 1, ¶ 5 (Complaint).

### B.

Adrian Bradley filed this action against 3S Team, LLC in Ballard County Circuit Court on September 6, 2013, alleging 3S Team negligently assembled, maintained, or operated the scaffold at the NewPage Corporation facility in Wickliffe, Kentucky.  *See* R.

3

1-2 at 1, ¶ 4. 3S Team timely removed that action to this Court, *see* R. 1 at 1–2 (Notice of Removal), and ACE American Insurance Co. subsequently intervened, asserting a subrogation claim as LFI Fort Pierce, Inc.'s workers' compensation insurer, *see* R. 5 at 1 (Motion to Intervene); R. 11 at 1 (Order of December 5, 2013); R. 12 at 2, ¶ 9 (Intervenor's Complaint). Now, 3S Team moves for summary judgment as to Bradley's negligence claim. *See* R. 56 at 1 (Motion for Summary Judgment).

## II.

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, 3S Team must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of Bradley's claim. Fed. R. Civ. P. 56(c); *see Laster*, 746 F.3d at 726 (citing

4

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming 3S Team satisfies its burden of production, Bradley "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

### III.

3S Team asks the Court to grant summary judgment on Bradley's common law negligence claim. *See* R. 56 at 1. Under Kentucky law, a negligence claim "requires proof of (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012) (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88–89 (Ky. 2003)). Here, 3S Team argues that Bradley misapprehends the duty owed to him and has not proffered any evidence showing 3S Team breached its duty of care. For the reasons explained more fully below, the Court disagrees.

### A.

3S Team maintains that it owed no duty to Bradley because it lacked control over the premises at the time of Bradley's fall and had no contractual obligation to inspect and maintain the scaffolds. *See* R. 56-1 at 14–15 (Memorandum in Support); R. 61 at 2 (Reply in Support of Motion for Summary Judgment); *see also* R. 75 at 7–8 (Reply to Supplemental Response). Alternatively, 3S Team argues its duty, if any, must be limited to that of the licensor-licensee variety. *See* R. 56-1 at 15–18; R. 61 at 2–4; *see also* R. 75 at 7–8. The existence of a duty is a question of law for this Court to decide. *See Shelton*

*v. Ky. Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 908 (Ky. 2013), *as corrected* (Nov. 25, 2013).

### 1.

In support of its no-duty position, 3S Team points the Court to *Landel v. Kroger Co.*, No. 2013-CA-001637-MR, 2015 WL 226114 (Ky. Ct. App. Jan. 16, 2015), in which the Kentucky Court of Appeals discussed the concept of duty in the landlord-tenant context. There, a customer sued a retailer after the defective and dangerous condition of the parking lot caused her to fall. *Id.* at *1. In an unpublished opinion, the Kentucky Court of Appeals held that the retailer owed no duty to the customer because the retailer merely leased the parking lot from a different entity which, under the lease, expressly assumed the obligation to maintain the property. *Id.* at *4. According to 3S Team, *Landel* leads to the same conclusion here: Because 3S Team exercised no control over the scaffold at the time of Bradley's fall, nor contracted to maintain or inspect it, it owed Bradley no duty to ensure the scaffold's safety. *See* R. 56-1 at 14–15.

While *Landel* suggests that 3S Team had no duty to *maintain* the scaffold once NewPage took possession of it, *see Landel*, 2015 WL 226114, at *4, Bradley alleges that 3S Team's "negligent *assembly*" of the scaffold resulted in his injuries, R. 1-2 at 1, ¶ 4 (emphasis added); *see also* R. 59 at 7–8 (Response to Motion for Summary Judgment) ("[T]here are questions of material fact regarding 3S Team's negligence *in assembling* the scaffolding, resulting in Mr. Bradley's fall and serious injuries." (emphasis added)). *Landel* says nothing on that separate question: namely, 3S Team's duty associated with constructing the scaffold. Contrary to 3S Team's suggestion, then, *Landel* is inapposite.

6

**2.**

Accepting for the sake of argument that it owed Bradley some duty, 3S Team insists that such an obligation goes no further than that of a licensor to his licensee. *See* R. 56-1 at 14–18; R. 61 at 2–4; *see also* R. 75 at 7–8. In support of that proposition, 3S Team relies heavily on *Brauner v. Leutz*, 169 S.W.2d 4 (Ky. 1943). In that case, an independent-contractor painter sued an independent-contractor carpenter for negligence when the latter's scaffold collapsed and injured the painter. *Id.* at 5. Because the painter used the scaffold gratuitously, and not for the carpenter's benefit, the Kentucky Court of Appeals refused to impose a duty on the carpenter "to construct and maintain the scaffold in a reasonably safe condition." *Id.* at 6. 3S Team submits that, like *Brauner*, there is no mutuality of benefit between it and Bradley such that the same conclusion inures here. *See* R. 56-1 at 16.

The Court is not so sure. In *Brauner*, the carpenter built the scaffold "solely for his use and benefit," but generously allowed the painter to use the scaffold, incidental to the carpenter's own use. 169 S.W.2d at 6. The carpenter gained nothing from his charity, so the Kentucky Court of Appeals thought it "unfair and unjust to burden him with the duty of seeing to it that the . . . things furnished are safe and free from dangerous defects." *Id.* at 7. Such is the common thread among *Brauner*'s progeny. *See Hill v. Lyons Plumbing & Heating Co.*, 457 S.W.2d 503, 504 (Ky. 1970) (holding relationship between subcontractors to be that of licensor-licensee in the absence of a mutuality of benefit); *Lee v. United Parcel Serv., Inc.*, 155 F. App'x 208, 212 (6th Cir. 2005) (same); *see also Arthur v. Standard Eng'g Co.*, 193 F.2d 903, 906 (D.C. Cir. 1951) (discussing *Brauner* and the mutuality-of-benefit test).

In the instant matter, however, 3S Team reaped a substantial benefit—a contract valued at nearly $95,000. *See* R. 56-2 at 8 (Purchase Order). Unlike *Brauner*, Bradley's use of 3S Team's scaffold was not merely incidental to 3S Team's own use either. Instead, NewPage retained 3S Team for the express purpose of constructing scaffolds for other contractors' use. It was the very foundation of the contract between NewPage and 3S Team. Had other contractors not required the scaffolds, there would be no need for 3S Team's services. Therefore, 3S Team benefited from Bradley's use of the scaffolding—a use that 3S Team necessarily anticipated.

In light of that mutuality of benefit, 3S Team's duty exceeded that owed by a licensor to his licensee. *See Klinglesmith v. Estate of Pottinger*, 445 S.W.3d 565, 568 (Ky. Ct. App. 2014) (defining duty owed by licensor to licensee). Instead, Bradley is better regarded as 3S Team's invitee. Accordingly, the Court holds that 3S Team owed Bradley a "duty of reasonable care in the construction of the scaffolding." *Scalise v. F. M. Venzie & Co.*, 152 A. 90, 92 (Pa. 1930). *See generally* 13 Am. Jur. 2d *Building & Construction Contracts* § 140, Westlaw (database updated February 2016). If 3S Team failed to exercise ordinary care in the construction, installation, or assembly of the scaffold, then 3S Team breached its duty of care. *Cf. Whittenberg Eng'g & Constr. Co. v. Liberty Mut. Ins. Co.*, 390 S.W.2d 877, 880–81 (Ky. 1965).

**B.**

Next, 3S Team argues that Bradley has not identified any admissible evidence suggesting that 3S Team breached its duty of care, *see* R. 56-1 at 17–18; R. 75 at 3–7, a question of fact generally incapable of resolution on summary judgment, *see Henson v.*

8

*Klein*, 319 S.W.3d 413, 423 (Ky. 2010).[1] Bradley takes issue with 3S Team's assessment of the record. Relying on George Nichols' expert testimony, he maintains that 3S Team improperly assembled the scaffold because it used neither latches nor toe boards to secure, or at least to enhance the stability of, the scaffolding planks.[2] *See* R. 69 at 6–8. For its part, 3S Team disagrees. *See* R. 75 at 3–7. Viewing the record in the light most favorable to Bradley, however, there appears to be a genuine dispute of material fact for a jury to resolve.

**1.**

As a preliminary matter, 3S Team objects to Bradley's reliance on the statements of Casey Cline, R. 69-1 at 50, and Jacob Broumley, R. 69-1 at 48, as inadmissible hearsay. *See* R. 61 at 5; R. 75 at 9–11. Conceding that the statements are hearsay, Bradley asks the Court to consider them under Federal Rule of Evidence 807 for the

---

[1] While Bradley has not used the phrase *res ipsa loquitur*, 3S Team suggests that doctrine is not available to him. *See* R. 56-1 at 19–21. In a nutshell, the doctrine of *res ipsa loquitur* merely "recognizes that as a matter of common knowledge and experience the very nature of an occurrence may justify an inference of negligence on the part of the person who controls the instrumentality causing injury." *Bell & Koch, Inc. v. Stanley*, 375 S.W.2d 696, 697 (Ky. 1964); *accord Vaughn v. Konecranes, Inc.*, ⸻ F. App'x ⸻, ⸻, 2016 WL 787919, at *7 n.6 (6th Cir. 2016). Reliance on the doctrine "is predicated upon a showing that (1) the defendant had full control of the instrumentality which caused the injury; (2) the accident could not have happened if those having control had not been negligent; and (3) the plaintiff's injury resulted from the accident." *Ryan v. Fast Lane, Inc.*, 360 S.W.3d 787, 790 (Ky. Ct. App. 2012) (quoting *Sadr v. Hager Beauty Sch., Inc.*, 723 S.W.2d 886, 887 (Ky. Ct. App. 1987)); *see also Vernon v. Gentry*, 334 S.W.2d 266, 268 (Ky. 1960). Here, several contractors used the scaffold on September 18, 2012—a day prior to Bradley's accident. In light of that joint access and use, 3S Team lacked complete control over the scaffold. *See Davis Red Rock Bottling Co. v. Alsip*, 287 S.W.2d 594, 595 (Ky. 1956). Accordingly, the doctrine *res ipsa loquitur* is not applicable.

[2] On this point, Bradley emphasizes that, after reviewing the accident, NewPage required contractors to use latches to secure the ends of scaffolding planks for this and other, future projects. *See* R. 59 at 8 (citing R. 69-2 at 22–23 (Serious Accident Alert); R. 69-3 at 42, 44, 71 (Monroe's Deposition)). 3S Team argues that Federal Rule of Evidence 407 bars the admission of subsequent remedial measures, such as NewPage requiring latches. *See* R. 61 at 8. For purposes of resolving its motion for summary judgment, the Court agrees with 3S Team and will not consider NewPage's subsequent remedial actions as evidence of 3S Team's negligence. *See* Fed. R. Evid. 407; *In re Air Crash Disaster*, 56 F.3d 498, 528–29 (6th Cir. 1996). *But see Kelter v. Conken Sys., Inc.*, No. 5:12-CV-00053-TBR, 2014 WL 7335171, at *2 (W.D. Ky. Dec. 19, 2014).

narrow purpose of resolving 3S Team's summary judgment motion. *See* R. 69 at 10. Rule 807 allows the admission of a hearsay statement that does not fall under the exceptions to hearsay found in Rules 803 and 804 if the statement meets four criteria:

> (1) the statement has equivalent circumstantial guarantees of trustworthiness, (2) the statement is offered as evidence of a material fact, (3) the statement is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts, and (4) admitting the statement will best serve the purposes of the Rules of Evidence and the interests of justice.

*Brumley v. Albert E. Brumley & Sons, Inc.*, 727 F.3d 574, 578 (6th Cir. 2013) (citing Fed. R. Evid. 807; *United States v. Gomez-Lemos*, 939 F.2d 326, 329 (6th Cir. 1991)).

Here, Cline and Broumley's statements satisfy that rigorous standard.  First, 3S Team ostensibly provided Cline and Broumley, employees of Hi-Tech Testing, with the preprinted templates on which each handwrote a statement, *see* R. 69-1 at 48, 50, and made them exhibits to Bradley's deposition, *see* R. 56-3 at 91–99.  Both Cline and Broumley certified that the statements were true and correct, and provided freely without threat or promise of immunity or disciplinary action.  *See* R. 69-1 at 48, 50.  Second, the statements relate to a material fact—that is, how the accident at issue transpired.  Third, while the record is unclear as to why Bradley decided not to depose either Cline or Broumley, the statements remain highly probative on the point for which Bradley offers them.  Because admitting the challenged statements for such a limited use would serve the general purposes of the Federal Rules of Evidence, the Court will consider them at the summary judgment stage.  *See Brumley*, 727 F.3d at 578; *Taulbee v. Wal-Mart Stores, Inc.*, 5 F. App'x 361, 364 (6th Cir. 2001).

**2.**

Resolving all ambiguities and drawing all reasonable inferences in his favor, Bradley has adduced sufficient evidence from which a reasonable jury could find that 3S Team breached its duty of care. While working on 3S Team's scaffold inside the boiler at NewPage's facility, Bradley stepped onto the edge of a scaffolding plank. The scaffolding plank twisted in an ascending manner, causing Bradley to lose his footing and fall from the scaffold's third level. Having reviewed the materials of record, Nichols opines that the "proximate cause of [Bradley's] accident was that the inner portion of the [scaffolding plank was] not adequately secured against vertical movement." R. 69-4 at 5–6 (Nichols' Report). 3S Team should have used clamps or incorporated toe boards to secure the plank, Nichols says, as either would have inhibited the plank's vertical mobility. *Id.* at 6; *see also id.* at 4. In Dr. Nichols' opinion, those measures were cost effective, feasible, and would have prevented Bradley's accident. R. 80-2 at 4–5 (Dr. Nichols' Supplemental Report); *see also* R. 69-4 at 5–6. After all, the contract between NewPage and 3S Team required 3S Team to incorporate toe boards in the completed scaffold. Accordingly, a reasonable jury might find that, in the exercise of ordinary and reasonable care, 3S Team should have used clamps or toe boards to more adequately secure the scaffolding planks.

3S Team disputes Nichols' conclusions. It retained David Glabe of DH Glabe & Associates, Inc., to assess Bradley's accident and Nichols' report. In Glabe's opinion, 3S Team assembled the scaffold in accordance with "typical industry practice" and in compliance with the Occupational Safety and Health Administration's standards.[3] R. 75-

---

[3] 3S Team stresses that the scaffolds complied with the Occupational Safety and Health Administration's standards. *See* R. 56-1 at 17–18; R. 61 at 7, 11–12; R. 75 at 3–7. To be sure, compliance

11

1 at 5 (Glabe's Report); *see also* R. 56-2 at 2, ¶ 4. Glabe could find "no evidence that shows the design, manufacture, or . . . installation of the scaffold" caused Bradley's accident. R. 75-1 at 6. Whatever the cause of Bradley's accident might be, Glabe opines, it was not "the 3S Team installed planks." *Id.* at 8.[4]

Perhaps 3S Team's supposition is correct. Because two experts disagree on that critical issue, however, "their testimony creates a genuine dispute of material fact." *Am. Towers LLC v. BPI, Inc.*, Civil No. 12-139-ART, 2014 WL 7237980, at *7 (E.D. Ky. Dec. 17, 2014). Consequently, a jury must decide which expert's testimony to credit, and the Court will deny 3S Team's motion for summary judgment.

## IV.

**IT IS HEREBY ORDERED** that Defendant 3S Team, LLC's Motion for Summary Judgment (R. 56) is **DENIED**; and,

---

with pertinent regulatory standards tends to show that 3S Team acted reasonably. *See Vaught's Adm'x v. Ky. Utils. Co.*, 296 S.W.2d 459, 462 (Ky. 1956) (citing *Rudd v. Public Serv. Co. of Okla.*, 126 F. Supp. 722 (N.D. Okla. 1954)); *accord Home Ins. Co. v. Hamilton*, 253 F. Supp. 752, 755 (E.D. Ky. 1966); *Isbell v. Union Light, Heat & Power Co.*, 162 F. Supp. 471, 474 (E.D. Ky. 1958); *see also* Dan B. Dobbs et al., *The Law of Torts* § 249 (2d ed.), Westlaw (database updated June 2015). But compliance alone does not relieve 3S Team of tort liability. *See O'Donley v. Shelby*, 262 S.W.2d 362, 363 (Ky. 1953) (citing *Pryor's Adm'r v. Otter*, 105 S.W.2d 564 (Ky. 1937); *Bosshammer v. Lawton*, 237 S.W.2d 520 (Ky. 1951)); *accord Matilla v. S. Ky. Rural Elec. Coop. Corp.*, 240 F. App'x 35, 40 n.8 (6th Cir. 2007); *Bumpus v. Carhartt, Inc.*, No. 4:13-CV-00104-JHM, 2016 WL 154133, at *5 (W.D. Ky. Jan. 12, 2016); *Wales v. Farmers Stockyards, Inc.*, 5:14-CV-394-JHM, 2016 WL 927178, at *3 (E.D. Ky. Mar. 10, 2016); *see also* Restatement (Second) of Torts § 288C ("Compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions.").

[4] 3S Team points out that other contractors working on NewPage's facility violated the Kentucky Occupational Safety and Health Administration's regulations because none inspected the scaffolds before each work shift. *See* R. 56-1 at 21–24; R. 61 at 6–8, 10; *see also* R. 75-1 at 2–4. The KOSHA regulation pertaining to scaffolds, 803 Ky. Admin. Regs. 2:411 § 2, incorporates by reference the standards set forth in OSHA, codified at 29 C.F.R. § 1926.451(f)(3). According to § 1926.451(f)(3), scaffolds must be "inspected for visible defects by a competent person before each work shift, and after any occurrence which could affect a scaffold's structural integrity." 3S Team suggests that had the contractors performed the requisite inspections, other possible deficiencies in the scaffold might have been revealed. While the negligence of other contractors may vary the apportionment of fault, *see* Ky. Rev. Stat. § 411.182, 3S Team makes no argument as to how that negligence absolves it of liability completely. Accordingly, the Court rejects such an argument, to the extent 3S Team raises it, as a basis for summary judgment.

**IT IS FURTHER ORDERED** that Plaintiff Adrian Bradley's Motion for Leave to File Sur-Reply (R. 63) is **DENIED**.

**IT IS SO ORDERED**.

Date:

cc:     Counsel of Record